# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------X
IMPERIAL PRODUCTS, INC.                :    Civil Case No.
                                       :
             Plaintiff,                :
                                       :    ADMIRALTY
       vs                              :
                                       :
NAVIG8 LIMITED; and NAVIG8              :
STEALTH CORPORATION                    :
             Defendants,               :
                                       :
       and                             :
                                       :
NAVIG8 AMERICA, LLC,                   :
NAVIG8 CHEMICALS AMERICA               :
LLC, and NAVIG8 PRODUCT                :
TANKERS, LLC.                          :
             Garnishees                :
------------------------------------------------------------X
```

### VERIFIED COMPLAINT WITH PRAYER FOR PROCESS
### OF MARITIME ATTACHENT AND GARNISHMENT

Plaintiff IMPERIAL PRODUCTS, INC. ("IMPERIAL" or "Plaintiff") files this Verified Complaint against NAVIG8 LIMITED and NAVIG8 STEALTH CORPORATION ("Defendants"), and for its claims against Defendants avers and pleads as follows.

### PARTIES, JURISDICTION, AND VENUE

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration. Plaintiff brings this action pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule B") to obtain security for maritime claims pending in arbitration proceedings in London, and for maritime claims in a suit about to be

1

commenced against NAVIG8 LIMITED in the High Court in London.  Plaintiff seeks an order and writ of attachment over property of Defendants NAVIG8 LIMITED and NAVIG8 STEALTH CORPORATION, including but not limited to the Defendants' legal and/or equitable limited liability company interest in the Delaware companies Navig8 Chemicals America, LLC, Navig8 America, LLC, and Navig8 Product Tankers, LLC (hereinafter referred to collectively as the "Garnishees"), which Defendant NAVIG8 LIMITED owns through its intermediary corporate subsidiaries, Navig8 Chemicals Europe Limited and Navig8 Europe Limited, and any credits or effects of Defendants in the hands of the said Garnishees, including but not limited to accounts, debts, dividends, contractual rights, and any intangible property whatsoever of Defendants NAVIG8 LIMITED and NAVIG8 STEALTH CORPORATION in the hands of the Garnishees up to the amount claimed hereunder.

2.     At all times material hereto, Plaintiff IMPERIAL was and is a business entity organized and existing under the laws of the Republic of the Marshall Islands and was the registered owner of the Motor Tanker NAVIG8 STEALTH, a vessel registered in the Ship's Register of the Marshall Islands.

3.     At all times material hereto, Defendant NAVIG8 LIMITED was and is a business entity organized and existing under the laws of the Bailiwick of Jersey, Channel Islands.

4.     At all times material hereto, Defendant NAVIG8 STEALTH CORPORATION (hereinafter also referred to as "CHARTERER") was and is a business entity organized under the laws of the Republic of the Marshall Islands.

5.     At all times material hereto, Garnishee Navig8 Chemicals America, LLC was and is a limited liability company organized and existing under the laws of Delaware and has as its

registered agent Corporation Service Company, 2711 Centerville Rd. Suite 400, Wilmington, Delaware.

6. At all times material hereto, Garnishee Navig8 America, LLC was and is a limited liability company organized and existing under the laws of Delaware and has as its registered agent Corporation Service Company, 2711 Centerville Rd. Suite 400, Wilmington, Delaware.

7. At all times material hereto, Garnishee Navig8 Product Tankers, LLC was and is a limited liability company organized and existing under the laws of Delaware and has as its registered agent Corporation Service Company, 2711 Centerville Rd. Suite 400, Wilmington, Delaware.

8. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333, because this action arises from a maritime contract – *i.e.,* a bareboat charter party, which was breached when the CHARTERER failed to repair numerous items of damage to the chartered Vessel and redeliver her at the expiration of the charter term in the same good order and condition as she was upon delivery, as well as the performance guarantor/co-obligor's breach of its obligation to effect said repairs following the CHARTERER's failure to honor its obligations under the charter party.

## FACTS

9. On or about May 18, 2007, Plaintiff agreed to charter the Motor Tanker JASMINE, since renamed the M/T NAVIG8 STEALTH (hereinafter also referred to as the "Vessel"), to Navig8 Pte., Ltd. on an amended "BARECON 89" bareboat charter party form (hereinafter also referred to as "the bareboat charter") for a period of about eight (8) years with a right to extend the charter term for an additional period of two years at the charterer's option. A copy of the bareboat charter party is attached hereto as **EXHIBIT 1**.

10. Plaintiff duly delivered the Vessel in good order and condition to CHARTERER, and she entered upon its service.

11. On July 17, 2012, IMPERIAL and Navig8 Pte., Ltd. agreed to a reduction in the daily hire rate to $8,000 for the twelve month period beginning August 1, 2015, pursuant to Addendum No. 2 to the bareboat charter party, a copy of which is hereto attached as **EXHIBIT 2**.

12. During the term of the bareboat charter, Navig8 Pte., Ltd. requested a novation agreement, which was thereafter made between IMPERIAL, Navig8 Pte., Ltd., and NAVIG8 STEALTH CORPORATION, dated May 15, 2009, pursuant to which NAVIG8 STEALTH CORPORATION ("CHARTERER") was substituted as the bareboat charterer of the Vessel.

13. To induce IMPERIAL to enter into the Novation Agreement and accept NAVIG8 STEALTH CORPORATION as its contractual counterparty under the charter, Defendant NAVIG8 LIMITED issued its Performance Guarantee in favor of Plaintiff IMPERIAL. The May 15, 2009 Performance Guarantee warrants the corporate ownership and control of the CHARTERER by NAVIG8 LIMITED and also provides in relevant part:

> We hereby confirm that *we legally and beneficially own a controlling stake in the issued share capital of the Charterer*….
>
> In consideration of your agreeing to enter into the novation agreement dated on the date hereof in relation to the Charter, we hereby irrevocably and unconditionally guarantee to you, *as primary obligor and not merely as surety*, that the Charterer will pay to you in full when due each sum payable from time to time under and in connection with the Charter and will perform fully all of its other obligations under the Charter. If for any reason the Charterer should fail to pay you when due any amount for which it is liable under or in connection with the Charter or should fail to perform any of its obligations under the Charter in a timely manner and such failure continues for a period of 10 days from the date on which the relevant payment or the performance of any other obligation is due, we undertake to:
> 1. *pay any amount owing* under or in connection with the Charter directly to you, immediately upon your first demand; and
> 2. *perform any obligations* under or in connection with the Charter, immediately upon your first demand.

Performance Guarantee, dated May 15, 2009, attached hereto as **EXHIBIT 3** (emphasis added).

14. In accordance with the concept of bareboat chartering and the express provisions of the Bareboat Charter (*see* EXHIBIT 1, above), it was the obligation of CHARTERER, at its cost, to appoint its own Master and crew; victual and supply all necessary deck, engine and cabin stores, provisions, and bunkers; and take out all hull and machinery, war risks, and P&I insurances.

15. Additionally, CHARTERER was obligated, at its expense, to ensure that all surveys were undertaken, to maintain the Vessel in class, and to undertake, pursuant to Clause 9 of Part II of the Charter Party, all maintenance and repairs of the Vessel during the currency of the Charter, having an obligation to redeliver the Vessel to her owner under Clause 14 in the same good order and condition as on delivery to CHARTERER at the commencement of the charter, fair wear and tear not affecting class excepted.

16. Near the end of the charter term in August 2016, CHARTERER gave notice of its intention to redeliver the Vessel, with redelivery being finalized on or about September 16, 2016.

17. CHARTERER severely restricted Plaintiff's representatives' lawful access onboard the Vessel to conduct a complete pre-redelivery inspection, but the attenuated inspection performed despite CHARTERER's restrictions nevertheless revealed that the Vessel was in an extremely poor state with numerous hull and machinery items in urgent need of repair.

18. In the course of Plaintiff's representatives' post-redelivery inspections and surveys, it became apparent that CHARTERER had failed to maintain and repair the Vessel as it was contractually bound to do under the bareboat charter party, and CHARTERER tendered the Vessel for redelivery in a damaged condition, which far exceeded fair wear and tear not affecting class, necessitating extensive repairs to restore the Vessel in such seaworthy order and condition as was

necessary for the Vessel to be acceptable to her subsequent charterers for further employment and to retain the market value commensurate with a vessel of her type, description and age.

19. The damages to the Vessel discovered after redelivery inspections and surveys include, without limitation, the following: various deformations to the Vessel's hull; damage to the internal coating of cargo tanks; extensive damage and deterioration to clamps, fittings, valves, electrical cables, and cargo pipes on deck; corroded and wasted supports and structural components painted over to cover up the rust; and damage to the main engine caused by water intrusion.

20. Subsequent to her redelivery on September 19-20, 2016, the Vessel's attending classification society surveyors (Lloyd's Register) conducted an inspection, which disclosed that CHARTERER had failed to maintain the Vessel in class per requirements of the bareboat charter, reported numerous items needing repair, and imposed three conditions to be met before the Vessel could be reentered in class.

21. Between September 24 and 25, 2016, independent surveyors, TMC Marine, conducted a further survey of the Vessel's condition and found her to be in a substantial state of disrepair, determining that CHARTERER had failed to provide even basic maintenance, with the advanced state of the Vessel's deterioration being the obvious result of consistent neglect.

22. The myriad items TMC Marine's report found to be damaged and deteriorated included several broken-down pumps, compressors and purifiers; electrical cables re-wired in an *ad hoc* and defective manner; the complete removal from the Vessel of its Planned Maintenance System records and obvious non-observance of same over the course of the charter; several critical pieces of machinery in dire need of substantial overhauling; numerous corroded and rusted plates above and below deck, which in many instances had been simply covered over with paint instead

of being properly maintained; numerous non-functioning items of equipment in the engine room, galley, and sanitary facilities; cargo tanks 1-3 and ballast tanks in poor state of repair; gas and steam lines corroded, wasted and leaking; evident failure of CHARTERER to perform the periodic overhaul of certain items of machinery at intervals required by their respective manufacturers and the Vessel's Planned Maintenance System; and the complete absence of engine room maintenance records, which CHARTER had removed from the Vessel prior to redelivery.

23. Plaintiff's estimated total costs for repairing/restoring the Vessel to a good repaired state as she should have been on redelivery is approximately $5,806,129.16 (FIVE MILLION EIGHT HUNDRED SIX THOUSAND ONE HUNDRED TWENTY-NINE DOLLARS AND SIXTEEN CENTS).

24. By reason of CHARTERER's failure to redeliver the Vessel to Plaintiff in the condition required under the bareboat charter, Plaintiff was unable to timely deliver her in her new employment, because it was necessary to first perform substantial remedial repairs during the agreed canceling range of dates (laycan) between September 17 and 30, 2016. Thus, Plaintiff lost the hire the Vessel would have earned, and incurred expenses for the bunkers that would have been paid for by the Vessel's subsequent charterer, which are estimated to be $160,364.58 in hire, plus bunkers for the aforesaid period in the sum of $12,784.60 (12.8 days * 4 MT HFO/day * $249.7 / MT), for a total amount of $173,149.18 (ONE HUNDRED SEVENTY-THREE THOUSAND ONE HUNDRED FORTY-NINE DOLLARS AND EIGHTEEN CENTS).

25. By reason of CHARTERER's failure to redeliver the Vessel to her owners in the condition required under the bareboat charter and the consequent need to conduct further repairs past the September 30, 2016 laycan, Plaintiff was required to reduce the daily hire rate from $12,500 to $10,000.00 in order for the Vessel's subsequent charterer to agree to extend the

cancelling date to October 2, 2016. As a result, Plaintiff has lost daily hire from September 30 through December 13, 2016 (seventy-five days) at the daily rate of $2,500 -- *i.e.* $187,500 (ONE HUNDRED EIGHTY-SEVEN THOUSAND FIVE HUNDRED DOLLARS).

26. Due to the Vessel's poor condition on redelivery from CHARTERERS, her subsequent charterers were forced to place the Vessel off hire on two occasions: (1) October 3 - 7, 2016, she went off hire as a result of the cargo tanks being rejected; and (2) October 12 - 13, 2016, she went off hire due to the need to source and obtain various spare parts. Plaintiff calculates the total off-hire amounts for these periods to be $50,209.44 (FIFTY THOUSAND TWO HUNDRED NINE DOLLLARS AND FOURTY-FOUR CENTS).

27. By reason of the several breaches of the bareboat charter set out above, Plaintiff incurred further and additional miscellaneous costs and expenses, including the cost of marine surveyors' attendance and transportation, *etc.*, which is estimated to be approximately $38,750 (THIRTY-EIGHT THOUSAND SEVEN HUNDRED FIFTY DOLLARS).

28. Plaintiff has made due demand on CHARTERER to undertake the required repairs to the Vessel and pay the outstanding charter hire and other amounts owed under the bareboat charter, but CHARTERER has refused.

29. After more than ten days of CHARTERER's continued and sustained failure to honor its contractual obligations despite Plaintiff's demand that it effect repairs and pay outstanding sums owed under the bareboat charter, Plaintiff made written demand on CHARTERER's co-obligor, NAVIG8 LIMITED, pursuant to the express provisions of the Performance Guarantee, as noted in ¶13 above, requiring NAVIG8 LIMITED to make the necessary repairs and pay the outstanding hire as co-obligor. To date, NAVIG8 LIMITED has refused to honor its obligations under the Performance Guarantee.

## ARBITRATION AND ADJUDICATION IN LONDON

30. Clause 26 of the bareboat charter party provides that any dispute arising between owners and CHARTERERS shall be referred to arbitration in London, with English law to apply.

31. NAVIG8 LIMITED's Performance Guarantee provides in relevant part: "This guarantee shall be governed by, and construed in accordance with, English law.  We hereby irrevocably submit to the exclusive jurisdiction of the English courts to settle and [*sic*] dispute or proceedings arising out of or in connection with this guarantee." *See* **EXHIBIT 3**.

32. Plaintiff has commenced maritime arbitration under Clause 26 by appointing and giving CHARTERER notice of the appointment of its chosen arbitrator and of Plaintiff's intent to refer its claims against CHARTERER to arbitration.  Likewise, Plaintiff intends to initiate proceedings in English court against NAVIG8 LIMITED pursuant to the terms of the Performance Guarantee and NAVIG8 LIMITED's refusal to honor its obligations thereunder.

33. Plaintiff's claims in the London maritime arbitration and English court proceedings are for damages due to failure to redeliver the Vessel in good order and condition as required under the bareboat charter, lost hires from the subsequent employment of the Vessel, which she was unable to timely enter by reason of her deteriorated condition at redelivery, and other losses and damages specifically pled in the foregoing ¶¶ 9-29 in the principal amount of $6,245,757.78 (SIX MILLION TWO HUNDRED FORTY-FIVE THOUSAND SEVEN HUNDRED FIFTY-SEVEN DOLLARS AND SEVENTY-EIGHT CENTS), together with interest at the rate of 3.65% compounded at quarterly intervals, which is estimated to be $231,478.00 (TWO HUNDRED THIRTY-ONE THOUSAND FOUR HUNDRED SEVENTY-EIGHT DOLLARS) from the time it was due and payable to the projected date of the award, *i.e.* September 31, 2017.

34.     It is customary for London maritime arbitrators and English courts to award the prevailing party its legal fees, arbitrators' fees, costs for the rental of arbitration premises, and costs for the attendance of witnesses, all of which Plaintiff estimates will total no less than $400,000.00 (FOUR HUNDRED THOUSAND DOLLARS).

35.     Based on the foregoing, Plaintiff's total claim in arbitration and/or English court proceedings is presently estimated to be **$6,887,235.78** (SIX MILLION EIGHT HUNDRED EIGHTY-SEVEN THOUSAND TWO HUNDRED THIRTY-FIVE DOLLARS AND SEVENTY-EIGHT CENTS).

## NAVIG8 LIMITED'S RELATIONSHIP TO THE GARNISHEES

36.     At all times material hereto, NAVIG8 LIMITED was and is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 AMERICA, LLC, which NAVIG8 LIMITED holds directly or through its wholly-owned subsidiary, Navig8 Europe, Ltd.  *See* Declaration of Daniel Chu dated October 8, 2010, filed in the United States District Court for the District of Connecticut in *Harpa Shipping & Chartering GMBH & Co. KG v. Emirates Trading Agency (L.L.C.)*, civil action 3:10-cv-01260-MRK at ¶ 8, hereto attached as **EXHIBIT 4.**  *See also* Declaration of Daniel Chu dated October 18, 2010, filed in the United States District Court for the District of Connecticut in *Harren & Partners Schiffahrts CMBH & CO. v. Emirates Trading Agency (L.L.C.)*, civil action 10-cv-01262-CFD at ¶ 8, hereto attached as **EXHIBIT 5**.  *See also* Consolidated Financial Statements of Navig8 Europe Limited for the year ended March 31, 2015 at pages 17 and 21, hereto attached as **EXHIBIT 6**.

37.     At all times material hereto, NAVIG8 LIMITED was and is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 CHEMICALS AMERICA, LLC, which NAVIG8 LIMITED holds directly or through

its wholly-owned subsidiary, Navig8 Chemicals Europe, Ltd. *See* Corporate Disclosure Statement of NAVIG8 CHEMICALS AMERICA, LLC filed in the United States District Court for the District of Connecticut in *Olav Ekeberg v. Navig8 Chemicals America, LLC*, civil action 3:16-cv-00262-JAM, hereto attached as **EXHIBIT 7**; *see also* Consolidated Financial Statements of Navig8 Chemicals Europe, Ltd. for the year ended March 31, 2015 at pages 16 and 19, hereto attached as **EXHIBIT 8**.

38. At all times material hereto, NAVIG8 LIMITED was and is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 PRODUCT TANKERS, LLC. *See* Consolidated Financial Statements of Navig8 Chemical Tankers, Inc. and Subsidiaries at pages F-31 and F-32, hereto attached as **EXHIBIT 9**.

39. At all times material hereto, NAVIG8 LIMITED was and is a creditor of garnishees NAVIG8 AMERICA, LLC, NAVIG8 CHEMICALS AMERICA, LLC, and NAVIG8 PROCUCT TANKERS, LLC, which are its closely-held subsidiaries, are indebted to it, and regularly transact business for its benefit and on its behalf. *See* **EXHIBIT 6** at 21, **EXHIBIT 8** at 19, and **EXHIBIT 9** at F-31 and F-32.

## APPLICATION FOR ATTACHMENT
## UNDER SUPPLEMENTAL ADMIRALTY RULE B

40. On the basis of the facts alleged above, Plaintiff has a valid maritime claim for the breach of the bareboat charter party, a maritime contract.

41. Defendants NAVIG8 STEALTH CORPORATION and NAVIG8 LIMITED are not present and cannot be found in the District of Delaware within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Law Claims and Asset Forfeiture Actions. *See* Attorney Declaration of Michael B. McCauley, attached hereto as **EXHIBIT 10.**

42. Nevertheless, Defendant NAVIG8 LIMITED has within the District tangible or intangible personal property in the hands of parties present in the forum who may be named as garnishees in the process of maritime attachment and garnishment, with said property consisting of debts, credits, or effects that may include, without limitation, the following: stocks; corporate shares; interests in limited liability companies; loan repayments; accounts payable; dividends payable; and payments held or which may be receivable by and/or payable to the said garnishee on behalf of and/or for the benefit of the Defendant.

43. More particularly, Defendant NAVIG8 LIMITED's subsidiaries and debtors that are named as garnishees in this Verified Complaint – NAVIG8 AMERICA, LLC; NAVIG8 CHEMICALS AMERICA, LLC, and NAVIG8 PRODUCT TANKERS, LLC – were formed in Delaware, are Delaware limited liability companies, and each have as their respective registered agent for service of process the same entity: Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, Delaware 19808.

44. As noted in ¶ 36 above, Defendant NAVIG8 LIMITED is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 AMERICA, LLC.

44. As noted in ¶ 37 above, Defendant NAVIG8 LIMITED is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 CHEMICALS AMERICA, LLC.

45. As noted in ¶ 38 above, Defendant NAVIG8 LIMITED is the ultimate beneficial owner of the legal and/or equitable controlling limited liability company interest in garnishee NAVIG8 PRODUCT TANKERS, LLC.

46. All named garnishees are indebted to Defendant NAVIG8 LIMITED as alleged in the foregoing ¶¶ 36-38.

47.  Plaintiff has maritime claims cognizable in admiralty against the Defendants arising out of a maritime contract, *i.e.* a bareboat charter party.

48.  The reasonably estimated amount of Plaintiff's claim is as follows:

a)  Damages for failure to redeliver the Vessel in good order and condition as on delivery and unpaid bareboat charter hire……………………………………… $6,245,757.78

b)  Interest (at the rate of 3.65%) on the outstanding principal compounded quarterly for one year.……… $ 231,478.00

c)  Legal fees and arbitration costs……………………… $ 400,000.00
                                                          ------------------
    TOTAL                                                  **$6,877,235.78**

49.  Therefore, Plaintiff's total claim for breach of the maritime contract is in the aggregate sum of **$6,877,235.78** (SIX MILLION EIGHT HUNDRED SEVENTY-SEVEN THOUSAND TWO HUNDRED THIRTY-FIVE DOLLARS AND SEVENTY-EIGHT CENTS).

**WHEREFORE**, Plaintiff prays as follows:

A.  That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction, be issued against Defendants NAVIG8 STREALTH CORPORATION and NAVIG8 LIMITED and that said Defendants be cited to appear and answer the allegations of this Verified Complaint;

B.  That, as the Defendants cannot be found within this District for the purposes of Rule B, all of the personal property both tangible and intangible in the hands of garnishees served in this District, consisting of debts, credits, or effects including but not limited to corporate stock and/or shares and/or limited liability company interests Defendants own in any business entities, corporations and/or limited liability companies named as garnishees in the Process of Maritime Attachment and Garnishment; any debts, whether matured or unmatured, owing to the said Defendants by such garnishees; and any accounts, checks, payments, transfers, and any other

tangible or intangible property whatsoever of which Defendants are beneficiaries, in the hands of garnishees named in the Process of Maritime Attachment and Garnishment, should be attached and seized pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

  C. That judgment be entered in favor of Plaintiff IMPERIAL PRODUCTS, INC., and against Defendants NAVIG8 LIMITED and NAVIG8 STEALTH CORPORATION, in the sum of **$6,877,235.78**, and the proceeds of the assets attached be applied in satisfaction thereof; and

  D. That the Court grant Plaintiff such additional and further relief as it deems just, equitable and proper.

Dated: December 29, 2016   Respectfully submitted,

              PALMER BIEZUP & HENDERSON, LLP

              /s/ Michael B. McCauley
              Michael B. McCauley (ID 2416)
              1223 Foulk Road
              Wilmington, DE 19803
              Tel: 302-594-0895
              Fax: 302- 478-7625
              E-mail: mccauley@pbh.com
              *Attorneys for Plaintiff*

*Of counsel:*

CHALOS & CO., P.C.
George A. Gaitas
(*pro hac vice application forthcoming*)
7210 Tickner Street
Houston, Texas 77055
Telephone: 713-936-2427
Facsimile: 713-782-5274
E-mail: georgegaitas@chaloslaw.com